# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| ROSELYN THEODORE,<br><br>       Plaintiff,<br><br>v.<br><br>HESS CORPORATION;<br>HESS OIL NEW YORK CORP.,<br>*as successor by merger of*<br>HESS OIL VIRGIN ISLANDS CORP.;<br>GLENCORE LTD.;<br>LOCKHEED MARTIN CORP.; and<br>COSMOGONY II, INC.<br><br>       Defendants,<br><br><br>HESS CORPORATION and<br>HESS OIL NEW YORK CORP.,<br><br>       Cross-Claimants/<br>       Cross-Defendants,<br><br>v.<br><br>GLENCORE LTD. and<br>LOCKHEED MARTIN CORP.,<br><br>       Cross-Defendants/<br>       Cross-Claimants. | Civil Action No. 2021-0178 |

**PLAINTIFF'S RESPONSE TO DEFENDANT LOCKHEED MARTIN'S DOCUMENT PRODUCTION IN SUPPORT OF LMC'S RESPONSE TO THE <u>COURT'S JULY 30, 2022 ORDER</u>**

Roselyn Theodore via her undersigned counsel files this short response to Defendant Lockheed Martin Corporation's (LMC) filing of 9/13/22, Doc.70 and filing of 9/14/22, Doc.71. In LMC's response to the Court's Show Cause Order, LMC asserts that it has a contractual indemnity contract with General Engineering Corporation (the prior entity to Cosmogony II, Inc.).

1. **The Alleged Indemnity/Insurance Contracts.**

   In LMC's Show Cause response filing of 9/13/22, LMC stated: "As such, Plaintiffs' claims in these above-captioned lawsuits trigger the contractual indemnity claim against <u>Cosmogony as successor-in-interest to GEC</u> to indemnify Lockheed Martin, as successor-in-interest to the Martin Marietta entities, in connection to the defense of the present actions."

   Further, in LMC's filing of 9/14/22 providing its alleged supporting documents, LMC stated: "In explaining this interrelationship, Lockheed Martin Corporation made reference to, but did not produce, a <u>written contract</u> by <u>which General Engineering Corporation</u>, and, by extension, Cosmogony as its successor in interest, has agreed to defend and indemnify Martin Marietta for any claims of bodily injury arising out of or in any manner connected with GEC's work at the Refinery."

   Undersigned counsel has carefully reviewed the four produced documents by LMC. What is interesting, despite LMC stating these are General Engineering Corporation (GEC) contracts, none of the 89 pages of documents ever mention General Engineering Corporation or GEC, nor is there a signature by any person affiliated with General Engineering Corporation or GEC. More comments are listed below each of the documents.

1. **January 4, 1982 Purchase Order between Martin Marietta and General Engineering Corporation, referencing "Exhibit A – General Terms and Conditions"**
   - o The alleged purchase order (Doc. 71-1, 10 pages total) makes no mention of General Engineering Corporation or GEC.

2. **"Exhibit A" to the January 4, 1982 Purchase Order, "General Terms and Conditions"**
   - o This "General Terms and Conditions" document (Doc. 71-2, 29 pages) also makes no mention of General Engineering Corporation or GEC.
   - o There is no signed signature page for this alleged agreement.

3. **"General Terms and Conditions" [LMC_Halliday_00005993 at 00006001]**
   - o This document is titled "Agreement for Engineering & Procurement Services Between Martin Marietta Aluminum, Inc., and Martin Marietta Alumina, Inc, and <u>Laramore, Douglas & Popham of New York</u>, Inc." (Doc. 71-3, 20 pages).

   o The document makes no mention of General Engineering Corporation or GEC
   o The document is unsigned. (See, p. 8 of 20)
   o This document states it is to be construed under New York law. (par.12, p. 13 of 20)

4. **"General Terms and Conditions" [LMC_Halliday_0006751]**
   o This document also makes no mention of General Engineering Corporation or GEC
   o <u>Bechtel Petroleum Incorporated</u> is acting as the agent for Martin Marietta Alumina and Martin Marietta Aluminum, Inc.
   o Governing Law is Maryland and venue is in Maryland. (See section 29, p. 30 of 30).
   o There is no signed signature page for this alleged agreement.

In reviewing LMC's documents, it seems that LMC's descriptions of "*a written contract by which General Engineering Corporation, and, by extension, Cosmogony as its successor in interest, has agreed to defend and indemnify Martin Marietta*" fall way sort of the mark. GEC is never mentioned. GEC is never named as a party, and any acknowledgment or signature by an agent of GEC is absent. There is no mutual agreement by GEC to do anything. It's disappointing that LMC would file 89 pages of documents that really support none of their assertions, but waste the Court's time in trying to review the boilerplate.

  If anything, these documents may show that LMC may have lawsuit under New York law against Laramore, Douglas & Popham of New York, Inc., and perhaps a lawsuit against its agent Bechtel Petroleum Incorporated in Maryland under Maryland Law, but that concerns not this lawsuit.

  **2. <u>The Tactical Involuntary Bankruptcy of Cosmogony filed by Glencore.</u>**

  Second, as the Court may be aware, co-defendant Glencore filed the tactical Chapter 7 involuntary bankruptcy against Cosmogony in Puerto Rico. The Puerto Rican bankruptcy judge has already questioned whether Glencore's involuntary bankruptcy petition was a tactical effort to delay litigation. See Order attached as **Exhibit A**, stating:

> What is the purpose of filing this involuntary chapter 7 petition when the only apparent asset is an expired insurance policy? There are no assets to liquidate. Is it

for the benefit of the petitioning creditor, that in the adversary proceeding prays for the extension of the automatic stay provisions for its own benefit?

*In Re: Cosmogony II, Inc.,* Case No. 22-01682-ESL, Doc.21, filed 08/02/22 (Ex. A).

3. **Tort Liability Insurance Policies are not Assets of a Debtor's Estate.**

Last, LMC tries to conflate third-party general liability policies with Cosmogony's involuntary bankruptcy. Tort liability policies are not a part of the bankruptcy estate of Cosmogony, because the benefit of tort liability insurance policies flow to the injured parties, not to the assets of Cosmogony. General Liability Insurance is not an assets of a debtor. Furthermore, the Plaintiffs have already stated many times, they are only seeking the extent of Cosmogony's legacy liability insurance polices (up to the $1 million dollars per occurrence). This makes no demand upon the assets of Cosmogony's debtor-estate.

Cosmogony II, Inc., formerly General Engineering Corporation, is a Virgin Islands corporation. Thus, it is governed under Virgin Islands law. The Third Circuit has clearly held plaintiffs have the ability to seek collection from general liability policies, because liability insurance policies are not part of the Debtor's Estate, but are for the benefit of those injured.

> the protection from liability afforded the debtor under the Code does not affect the liability of the debtor's insurers. Courts, relying on 11 U.S.C. § 524(e), have allowed claimants to proceed with tort claims against the debtor for the purpose of collecting from the debtor's liability insurer. See e.g. *Green v. Welsh*, 956 F.2d 30 (2d Cir.1992); *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir.1989). Thus, the creditor remains free to collect the full amount of the original obligation from any non-debtor party such as a guarantor or insurer.

*First Fid. Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993)

The Second Circuit in *Green v. Welsh*, states the majority rule: "Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit." 956 F.2d 30, 33 (2d Cir. 1992)(collecting cases).

The Eleventh Circuit in *Jet* also found that majority law permits collection against insurers. "[P]ursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable […because] the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life. [Explaining] the plaintiff in a negligence suit was permitted to seek recovery from her employer's liability insurer." See, *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 976 (11th Cir. 1989). The Seventh Circuit was also clear finding that a Discharge injunction does not extend to suit only nominally against debtor, where only relief sought is against insurer, stating "a suit to collect merely the insurance proceeds […] does not create a personal liability of the debtor, because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge." *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993)("As to whether such an injunction extends to a suit only nominally against the debtor because the only relief sought is against his insurer, the cases are pretty nearly unanimous that it does not."). Case abound.[1]

---

[1] See, 3 *Collier on Bankruptcy*, para. 524.01[3] p. 524–16 (15th ed. 1988).

*Matter of Edgeworth,* 993 F.2d 51, 55–56 (5th Cir. 1993)("Under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.")

*In re La. World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987) (holding that if a debtor does not have a direct interest in the proceeds of the insurance policy, the insurance proceeds are no longer property of the debtor's estate).

*In re Walker,* 927 F.2d 1138, 1142 (10th Cir. 1991)("§524(e) permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when […] establishment of that liability is a prerequisite to recovery from another entity [like an insurer].")

*In re Knoblock,* 10-40891-DRD7, 2021 WL 1287686, at *5 (Bankr. W.D. Mo. Apr. 2, 2021)("Bankruptcy courts have consistently interpreted the discharge provision as allowing the determination of the debtor's liability in order to recover from a third party, and not the debtor. This Court will not depart from that precedent.")

*In re Weiand Automotive Industries*, 612 B.R. 824, 859 (Bankr. D. Del. 2020)("Permitting a creditor to establish debtor liability and collect the judgment from a third-party is consistent with the principle of non-intervention with the bankruptcy estate.")

*In re SelectBuild Illinois, LLC*, 2015 WL 3452542, at *8-9 (Bankr. D. Del. May 28, 2015) ("The protection from liability afforded the debtor under the Code does not affect the liability of the debtor's insurers.")

*Moran v. Leach,* 83 Va. Cir. 141 (Va. Cir. 2011)("Numerous courts have been confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer. Many of those courts have relied on 11 U.S.C. §§ 524(a) and 524(e) in concluding that the discharge injunction does not bar such a suit.")

*In re Patterson*, 297 B.R. 110, 113 (Bankr. E.D. Tenn. 2003) ("The discharge of a chapter 7 debtor does not eradicate liability of third parties such as, for example, contractually responsible insurance companies. The discharge injunction is intended for the benefit of the debtor; it is not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.")

*In re Scott Wetzel Services, Inc.*, 243 B.R. 802, 804 (Bankr. M.D. Fla. 1999)("A debtor will not have a cognizable interest in the proceeds of the typical liability policy because the proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.")

*In re Jason Pharm., Inc*., 224 B.R. 315 (Bankr. D. Md. 1998)(permitting creditor, despite discharge of debt, to proceed nominally against the debtor in state court to establish creditor's right to recover from debtor's insurer)

*In re Catania*, 94 B.R. 250 (Bkrtcy. D.Mass.1989)(Court allowed the plaintiff to pursue the debtor after obtaining a discharge in a Chapter 7 for an automobile accident to establish the debtor's liability and to collect on the judgment only to the extent of the available insurance.")

*In re Lembke*, 93 B.R. 701, 702 (Bankr. D.N.D. 1988)("It is important to keep in mind is that a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability which, by virtue of section of 524(a)(2) bars its enforcement against him. The debt still exists, however, and can be collected from any other entity that might be liable. It makes no sense legally or equitably for an insurer to escape insurance coverage for injuries caused by its insured merely by the happenstance of the insured's bankruptcy discharge. Such a result would be fundamentally wrong")

*In re Mann*, 58 B.R. 953, 958(Bankr. W.D. Va. 1986)("the provisions of § 524 do not prohibit [Plaintiff] from maintaining the pending state court action against the discharged Debtor. The sole purpose for maintaining the suit is to obtain a judgment establishing the [Debtor's/defendant's] liability. Establishing this liability is a prerequisite to any right to recover. Thereafter, [Plaintiff] will seek recovery under the provisions of uninsured motorist [insurance] coverage with Virginia Farm Bureau. The Debtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the Debtor a fresh start in his economic life.

*In re White Motor Credit Corp*., 37 B.R. 631, 644–45 (Bankr. N.D. Ohio 1984) (permitting pending product-liability suits to continue despite confirmation of debtor's Chapter 11 plan on the ground that a future judgment would merely entitle the injured plaintiffs to insurance proceeds)

*Matter of McGraw*, 18 B.R. 140 (Bankr.W.D.Wis.1982) (granting relief from stay and lifting section 524 injunction, to permit movant ability to sue debtor for negligence in order to recover from debtor's insurer.)

**CONCLUSION**

In sum, the Defendants LMC and Glencore are throwing everything at the wall possible to see what sticks. This is a waste of this Court's limited time. This case, along with others, should be remanded immediately, so the Superior Court can finally organize these toxic-exposure cases in the various Master Dockets already existing in the Complex Division of the Superior Court of the Virgin Islands.

Dated: September 14, 2022

                                              Respectfully submitted,

                                              ***/s/ J. Russell B. Pate, Esq.***
                                              J. Russell B. Pate, Esq.
                                              **THE PATE LAW FIRM**
                                              P.O. Box 370, Christiansted, VI 00821
                                              Telephone: (340) 777-7283
                                              Facsimile: (888) 889-1132
                                              pate@sunlawvi.com

                                              H. Rick Yelton, Esq.
                                              Korey A. Nelson, Esq.
                                              **BURNS CHAREST LLP**
                                              365 Canal Street, Suite 1170
                                              New Orleans, LA 70130
                                              Telephone: (504) 799-2845
                                              Facsimile: (504) 881-1765
                                              knelson@burnscharest.com
                                              ryelton@burnscharest.com

                                              Warren T. Burns, Esq.
                                              Daniel H. Charest, Esq.
                                              **BURNS CHAREST LLP**
                                              900 Jackson Street, Suite 500
                                              Dallas, Texas 75202
                                              Telephone: (469) 904-4550
                                              Facsimile: (469) 444-5002
                                              wburns@burnscharest.com
                                              dcharest@burnscharest.com

---

*In re Honosky*, 6 B.R. 667 (Bankr.S.D.W.Va.1980) (lifting the automatic stay to permit movant to sue debtor for negligence in order to recover from debtor's insurer to the limit of liability coverage.)

**CERTIFICATE OF SERVICE**

It is hereby certified that on this the 14th day of September 2022, a true and exact copy of the foregoing document was served via ECF e-filing to:

Carl A. Beckstedt, III, Esq.
Robert Kuczynski, Esq.
Michael Rogers, Esq.
BECKSTEDT & KUCZYNSKI
2162 Church Street
Christiansted, St. Croix, USVI 00820
Phone: (340) 719-8086
Fax: (800) 886-6831
carl@beckstedtlaw.com
robb@beckstedlaw.com
michael@beckstedlaw.com

Carolyn F. O'Connor, Esq.
Joseph Hanlon, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973.735.5745 (Direct)
973.624.0800 (Main)
carolyn.oconnor@wilsonelser.com
joseph.hanlon@wilsonelser.com
  *Counsel to Hess Corporation and HOVIC/HONYC*

Ryan Stutzman, Esq.
1138 King St. Suite 100
Christiansted, VI  00820
(340) 773-3681
RStutzman@saastx.vi
  *Counsel to Virgin Islands Industrial Maintenance Corp.*

Richard H. Hunter, Esq.
HUNTER & COLE
1138 King Street, Suite 3
Christiansted, St. Croix, USVI 00820
Phone: 340-773-3535
Fax: 340-778-8241
rhunter@huntercolevi.com
layala@huntercolevi.com
  *Counsel to Glencore, Ltd.*

Kevin A. Rames, Esq.
Semaj I. Johnson, Esq.
LAW OFFICES OF K. A. RAMES, P.C.
2111 Company Street, Suite 3
Christiansted, St. Croix, USVI 00820
Phone: 340-773-7284
Fax: 340-773-7282
kevin.rames@rameslaw.com
semaj.johnson@rameslaw.com

Gregory K. Wu, Esq.
SHOOK HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108
Phone: 816-559-2189
Fax: 816-421-5547
gwu@shb.com
*Counsel to Defendant Lockheed Martin Corp.*

                                                  */s/ J. Russell B. Pate, Esq.*
                                                  J. Russell B. Pate, Esq.